UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VALIANT INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| ZAFER JAWICH, M.D., LYNDA GREEN and VICTORIA STASULAS, Independent Executor of the Estate of RONALD STASULAS, deceased, | ) ) ) ) |
| | ) 09 C 950 |
| Defendants. | ) |
| | ) |
| ZAFER JAWICH, M.D., | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| DIEDERICH INSURANCE AGENCY, LLC, | ) |
| | ) |
| Third-Party Defendant. | ) |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This case comes before the court on the motion of Plaintiff Valiant Insurance Company ("Valiant") for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, we deny Valiant's motion.

## BACKGROUND

Defendant Zafer Jawich, M.D. ("Jawich") is a physician admitted to practice in Illinois. Sometime in 2008, Jawich set out to obtain professional liability insurance. In September 2008, on the advice of his insurance broker, Jawich filled out an application to receive coverage from Valiant. On September 18, 2008, Jawich submitted his completed application materials to Valiant for review. In the application forms, Valiant asked Jawich to provide information as to accusations or claims of professional negligence against him. Specifically, Valiant asked (1) whether Jawich had ever been accused of professional negligence or had a professional negligence claim brought against him in the past; and (2) whether Jawich had knowledge of any claims, potential claims, or suits in which he may become involved in the future. Valiant also requested that Jawich provide a detailed account of each incident he referenced in describing previous or potential claims against him.

On September 18, just hours after he sent in his application to Valiant, Jawich learned that Lynda Green ("Green") had filed a complaint asserting a professional negligence claim against Jawich. Green alleged that Jawich acted negligently in providing her with medical treatment in January and February 2008. She further alleged that Jawich's negligence resulted in health complications that required her to undergo a double amputation of her feet and portions of her legs. Though Jawich learned of the

Green action after he submitted his materials to Valiant but before learning whether the company had accepted his application, he elected not to notify Valiant about the suit while decision on his application was pending.

Valiant did not evaluate Jawich's application itself but instead relied upon its underwriting agent, Managed Insurance Services, Incorporated ("MIS"). Under the contract between Valiant and MIS, MIS had the authority to quote, bind, and issue physicians' liability insurance policies on Valiant's behalf in accordance with Valiant's underwriting guidelines and the agreement between MIS and Valiant. Pamela Browning ("Browning"), the Vice President of Underwriting at MIS, participated in the evaluation of Jawich's application. After reviewing the representations made in Jawich's application, Browning ultimately decided to provide him with coverage. On September 30, 2008, Valiant formally issued a professional liability insurance policy to Jawich furnishing him with coverage for damages arising out of claims reported to Valiant from October 1, 2008, to October 1, 2009.

Browning testified that she would have made a different decision regarding Jawich's application had she been aware of the Green lawsuit. In his application, Jawich indicated that two claims of professional negligence had been filed against him in the past. Had Jawich notified Valiant of the Green suit, the number of prior negligence claims against him would have increased to three. Browning testified that three is her

"magical number" when evaluating applications for liability insurance; she never issues a policy to any applicant with three previous professional negligence claims regardless of the claims' merit or outcome. Browning also stated that she formulated this principle based on her experience and judgment. She further stated she would have denied Jawich coverage if she had known the actual number of negligence claims asserted against him in the past.

When Valiant eventually learned of the Green lawsuit in December 2008, the insurer agreed to defend Jawich subject to certain reservations. After reviewing Green's medical records, Jawich's attorney concluded that Jawich had little involvement in the treatment at issue. Based on his client's minimal participation in the conduct underlying the lawsuit, Jawich's attorney asked Green to voluntarily dismiss his client from the action. Green assented to the request and Jawich was dismissed as a party to the action on May 15, 2009.

On February 13, 2009, Valiant instituted this action against Jawich seeking rescission of the insurance policy as a result of Jawich's failure to disclose the Green lawsuit during the pendency of his application. Valiant then moved for summary judgment on its rescission claim on March 17, 2010. On April 29, 2010, we granted Jawich's request for additional discovery pursuant to Fed. R. Civ. P. 56(f) and gave both parties leave to file supplemental briefs. The parties having filed their additional submissions, we are now prepared to assess the merits of Valiant's motion.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record; if the party succeeds in doing so, the burden shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). With these principles in mind, we turn to Valiant's motion.

## DISCUSSION

Valiant maintains that it is entitled to judgment as a matter of law on its rescission claim because no genuine issues of fact exist as to (1) whether Jawich's failure to notify Valiant of the Green lawsuit constituted a misrepresentation; and (2) whether Jawich's misrepresentation was material. As an initial matter, we note that

the misrepresentation and materiality questions are substantially interrelated in the unique circumstances presented by the instant case. To determine whether Jawich made a misrepresentation, we must first decide whether the Green suit had a material effect on the risk involved in providing him with coverage. In Illinois, an applicant for insurance "has an obligation imposed by law to notify the insurer of any changed condition materially affecting the risk during the pendency of his application[.]" *Carroll v. Preferred Risk Ins. Co.*, 215 N.E.2d 801, 802 (Ill. 1966); *see also N. Life Ins. Co. v. Ippolito Real Estate P'ship*, 601 N.E.2d 773, 780-81 (Ill. App. 1992) (applying *Carroll*).[1] In recognition of this legal duty, a failure to update one's application to reflect a material change in the insurer's risk that occurred after submission but before the policy issues constitutes a misrepresentation. *See id*. at 803. Similarly, a misrepresentation will not void an insurance policy unless it "materially affects either

---

[1] Jawich contends that *Carroll* does not apply to the instant case because the parties contracted on the basis of conditions as they existed at the date the application was submitted. In delivering its opinion in *Carroll*, the Illinois Supreme Court relied upon the reasoning employed by the United States Supreme Court in *Stipcich v. Metro. Life Ins. Co.*, 277 U.S. 311 (1928). In *Stipcich*, the Supreme Court held that an insurance applicant has a duty to disclose additional material information acquired after his application was submitted. *Id*. at 316-17. However, the Supreme Court also held that an applicant would not have a duty to supplement his application if "the parties contract exclusively on the basis of conditions as they existed at the date of the application." *Id*. at 315. Jawich does not identify any language in either the application or the policy stating that Valiant predicated its decision to extend coverage solely upon circumstances at the time he signed his application. Absent some clear indication that the parties intended otherwise, we decline to infer that the parties contracted exclusively on conditions at the time of submission such that *Carroll* would not apply.

the acceptance of the risk or the hazard assumed by the company." 215 ILCS § 5/154 (2010). Given the fact that materiality permeates both inquiries, a court may employ the same analytical framework to assess Valiant's arguments as to both issues. Therefore, we will collapse the misrepresentation inquiry into our materiality discussion below.

Valiant contends that it is entitled to rescission as a matter of law because no disputed issue of fact exists as to whether the Green lawsuit materially affected the risk associated with insuring Jawich. To determine whether the misrepresentation was material, courts ask "whether reasonably careful and intelligent persons would have regarded the facts stated as substantially increasing the chances of the events insured against, so as to cause a rejection of the application." *Weinstein v. Metro. Life Ins. Co.*, 60 N.E.2d 207, 210 (Ill. 1945). "The materiality of false representations in an application for insurance is a question of fact for the jury[.]" *Mooney v. Underwriters at Lloyd's, London*, 213 N.E.2d 283, 285 (Ill. 1965). "However, where the misrepresentation is of such a nature that all would agree that it is or is not material, the question is appropriate for summary judgment." *Garde v. Country Life Ins. Co.*, 498 N.E.2d 302, 308 (Ill. App. 1986).

Valiant relies on Browning's affidavit and testimony to demonstrate the materiality of the Green lawsuit. An insurer may demonstrate the materiality of a misrepresentation by using an underwriter's testimony. *Alperin v. Nat'l Home Life Assurance Co.*, 336 N.E.2d 365, 367-68 (Ill. 1975). In her declaration, Browning avers

that she would not have issued a policy to Jawich on behalf of Valiant had she been aware of the Green lawsuit. As to the rationale for her hypothetical decision, Browning testified at her deposition that she never issued policies to an applicant with three prior claims of professional negligence, regardless of the claims' outcome or merit. Jawich contends that reasonable persons would not have found the Green lawsuit substantially increased Valiant's risk due to the doctor's minimal involvement in the treatment at issue as well as Green's decision to voluntarily dismiss him from the action.

We find that Valiant has not presented sufficient evidence to justify removing the materiality issue from the jury. Browning's declaration and deposition merely describe her own criteria for binding insurance policies based only on the number of prior claims levied against a person. Though Browning cites her experience and judgment as the basis for her rule, she did not elaborate as to what parts of her experience or judgment led her to formulate this rule. Additionally, Browning never offers any explanation as to why an applicant with three prior negligence actions is substantially more likely to pay professional negligence damages than someone with two such prior claims. In short, her statements and testimony are subjective in nature and do not address whether the Green lawsuit meets the objective materiality standard. We are unable to conclude that all reasonable persons would agree that Jawich's nondisclosure of the Green complaint was material. Therefore, we deny Valiant's motion for summary judgment.

## CONCLUSION

Valiant's motion for summary judgment is denied.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated: September 30, 2010